UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RANDAL ALAN NAVARRETE,

        Plaintiff,                    Case No. 1:24-cv-660

v.                                       Honorable Robert J. Jonker

E. HARDIMAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues Deputy Warden Unknown Winger, Assistant Deputy Warden J. Kludy, and Librarian E. Hardiman[1] in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that he was arrested and charged in the Oakland County Circuit Court in August of 2017. (*Id.*, PageID.3.) At his arraignment, the trial court provided Plaintiff with a Spanish interpreter. (*Id.*) "That translator tool was available and present throughout trial." (*Id.*) Ultimately, Plaintiff was convicted and sentenced to serve 25-99 years' incarceration. (*Id.*)

Shortly after Plaintiff arrived at the MDOC, he was appointed appellate counsel to assist him in his direct appeal. (*Id.*, PageID.4.) The Michigan Court of Appeals affirmed Plaintiff's convictions and sentences on September 17, 2019. (*Id.*) Plaintiff, with the assistance of an MDOC legal writer, then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (*Id.*) That application was denied in 2020. (*Id.*)

Plaintiff then returned to the trial court and, with the "assistance of a non-legal writer," filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (*Id.*) The trial court denied Plaintiff's motion on February 19, 2021. (*Id.*) Plaintiff sought leave to appeal in both Michigan appellate courts. (*Id.*) Both applications were denied. (*Id.*) Plaintiff reports that the application for leave to appeal filed in the Michigan Supreme Court was prepared by an assigned legal writer. (*Id.*) He does not allege who prepared the application for leave filed in the Michigan Court of Appeals.

Subsequently, Plaintiff, with the assistance of a legal writer at the St. Louis Correctional Facility, prepared and filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in

---

[1] Although Plaintiff references "E. Hariman" in the caption of his complaint, he refers to this individual as "Hardiman" throughout his complaint. The Court, therefore, construes the reference to "Hariman" to be a typographical error.

2

the United States District Court for the Eastern District of Michigan. (*Id.*) At some point in time between March 31, 2023, and July 3, 2023,[2] Plaintiff was transferred to MCF. (*Id.*, PageID.5.) The Eastern District of Michigan denied Plaintiff's § 2254 petition on July 5, 2023. (*Id.*)

After Plaintiff received the decision denying habeas relief he "immediately went to the Law Library and submitted a request for legal writer assistance." (Plaintiff's Sworn Statement, ECF No. 1-3, PageID.24.) That request, dated August 16, 2023, is attached to the complaint (Prisoner Request, ECF No. 1-4, PageID.27.) Plaintiff indicated that he needed help to file an appeal. (*Id.*)

On August 23, 2023, Defendant Hardiman denied Plaintiff's request. (*Id.*) Subsequently, "a letter was written on Plaintiff['s] behalf to Defendant Winger, requesting she intervene." (*Id.*) Defendant Winger delegated the issue to Defendant Kludy. (*Id.*) Defendant Kludy "claim[ed] to investigate the matter [and] indicated to Plaintiff that he was properly denied[] based on an incorrect 'OMNI' classification of Plaintiff's language as English." (*Id.*)

Plaintiff then filed a grievance about the matter, asserting that he does not understand English and that he obtained his General Equivalency Degree (GED) by taking the exam in Spanish. (*Id.*) Plaintiff indicated that he needed help to perfect his appeal because of the language barrier. (*Id.*) The grievance was denied based upon the fact that Plaintiff's primary language was indicated to be English in the OMNI system. (*Id.*, PageID.6.)

---

[2] The Eastern District of Michigan docket for Plaintiff's habeas case shows that he remained at the St. Louis Correctional Facility for about eleven months or perhaps longer after he filed the petition. He was at the St. Louis, Michigan facility when he filed his reply brief on March 27, 2023. *See* Pet'r's Reply, *Navarette v. Christiansen*, No. 22-11050 (E.D. Mich.) (ECF No. 11, PageID.946–47). Plaintiff did not notify the Eastern District of Michigan court that he had changed his address until July 3, 2023; the court did not receive that notice until after it had issued its dispositive decision. Pet'r's Notice, *id.* (ECF No. 14).

3

Plaintiff claims that because he was denied a legal writer, he was unable to submit a request for a certificate of appealability because he missed the deadline for doing so. (*Id.*) He contends that Defendants' denial of a legal writer violated his First Amendment right to access the courts. (*Id.*, PageID.7.) Plaintiff claims that had he been provided legal writer assistance to file a request for a certificate of appealability, he would have prevailed on his ineffective assistance of counsel claims on appeal. (*Id.*, PageID.10–13.) Plaintiff seeks injunctive relief in the form of an order directing Defendants to follow the "clear demands of [Policy Directive] 05.03.116, the enforcement of which would have made clear Plaintiff . . . could not 'effectively read English.'" (*Id.*, PageID.14.) Plaintiff also suggests that the deadline for filing a request for a certificate of appealability should be reinstated. (*Id.*) Finally, Plaintiff seeks compensatory and punitive damages. (*Id.*)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendants violated his First Amendment right to access the courts by denying him legal writer assistance for purposes of preparing a petition for a certificate of appealability.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

A. **Defendants Winger and Kludy**

Plaintiff suggests that Defendant Winger violated his First Amendment right to access the courts by failing to act when Plaintiff spoke to her about the denial of a legal writer. Plaintiff avers further that Defendant Kludy violated that right by failing to act upon Plaintiff's grievance.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

7

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Winger and Kludy encouraged or condoned the conduct of Defendant Hardiman, or authorized, approved, or knowingly acquiesced in that conduct. Instead, Plaintiff only faults Defendants Winger and Kludy for failing to act upon his oral and written grievances, which is insufficient to impose § 1983 liability. *See Summers*, 368 F.3d at 888; *Shehee*, 199 F.3d at 300.

Furthermore, to the extent Plaintiff raises claims regarding his use of the grievance procedure and the denial of his grievance, Plaintiff cannot maintain such claims. The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54, 64–65

8

(1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64–65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Additionally, to the extent that Plaintiff intended to allege that Defendants Winger and Kludy violated his right to petition the government, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

9

Accordingly, Plaintiff's First Amendment access to the courts claims, as well as any intended First and Fourteenth Amendment claims regarding Plaintiff's use of the grievance procedure, against Defendants Winger and Kludy will be dismissed.

### B.     Defendant Hardiman

Plaintiff alleges that Defendant Hardiman was the librarian who denied his request for legal writer assistance. Plaintiff requested such assistance so that he could file a petition for a certificate of appealability in the Sixth Circuit to challenge the Eastern District of Michigan's denial of Plaintiff's § 2254 petition. Plaintiff, therefore, has adequately alleged an underlying cause of action—a habeas corpus action—to which the right to access the courts extends. *See Thaddeus-X*, 175 F.3d at 391.

Plaintiff must also allege facts suggesting that the underlying action asserted a non-frivolous claim. *See Lewis*, 518 U.S. at 353; *Hadix*, 182 F.3d at 405. Public records indicate that Plaintiff raised the following grounds for relief in his § 2254 petition: (1) insufficient evidence supported his convictions; (2) trial and appellate counsel were ineffective for failing to investigate or object to an increase in charges after each plea offer; (3) the trial court erred by allowing an unqualified expert and a biased police officer to testify; and (4) he was denied a fair trial because witnesses received special treatment in exchange for their testimony and because the prosecutor committed misconduct. *See Navarrete v. Christiansen*, No. 2:22-cv-11050, 2023 WL 4355037, at *2 (E.D. Mich. July 5, 2023). The Eastern District of Michigan concluded that Plaintiff's insufficiency of the evidence claim lacked merit and that his remaining claims were procedurally defaulted. *See id.* at *3–6. The court further noted that even if Plaintiff had established cause for his procedural default, he failed to show prejudice because his claims lacked merit. *Id.* at *6. The Eastern District of Michigan denied Plaintiff a certificate of appealability and concluded that any appeal would be frivolous. *Id.*

Given the Eastern District of Michigan's determinations, Plaintiff has not—and cannot—allege that his underlying § 2254 petition asserted a non-frivolous claim. *See Lewis*, 518 U.S. at 353; *Hadix*, 182 F.3d at 405. Moreover, Plaintiff fails to allege that the denial of legal writer assistance resulted in a lost remedy in the underlying action. The Eastern District of Michigan denied Plaintiff's § 2254 petition on July 5, 2023. Plaintiff, therefore, had until August 7, 2023, to file his notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A) (noting that the notice of appeal must be filed within 30 days after entry of judgment); Fed. R. App. P. 26(a)(1) (noting that when the last day of a time period for a deadline stated in days falls on a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Plaintiff's exhibits, however, indicate that he did not request legal writer assistance for an appeal until August 16, 2023, more than a week after the deadline to appeal expired. (ECF No. 1-4, PageID.27.) Thus, even if Plaintiff has been given legal writer assistance, any appeal to the United States Court of Appeals for the Sixth Circuit would have been subject to dismissal as untimely.

For the foregoing reasons, Plaintiff has not set forth a plausible First Amendment access to the courts claim against Defendant Hardiman. Accordingly, the Court will dismiss that claim for failure to state a claim upon which relief can be granted.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does

11

not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   July 16, 2024                                                    /s/ Robert J. Jonker
                                                                          Robert J. Jonker
                                                                          United States District Judge